AO 106 (Rev. 5/85)  Affidavit for Search Warrant

# United States District Court

DISTRICT OF Delaware REDACTED

### In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

� ■■■■■■■■■■■ Wilmington, DE,
19805, described more particularly on
Schedule A

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER: 04-08M

I  SA Gregory P. Zack, FBI _____ being duly sworn depose and say:

I am a(n)  FBI Special Agent _____ and have reason to believe

Official Title

GPZ 1/9/04

that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

■■■■■■■■■ , Wilmington, DE 19805, described more particularly above

in the _____ District of  Delaware

there is now concealed a certain person or property, namely (describe the person or property)

see attachment A

**which is** (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

contraband and evidence of a crime

in violation of Title  18  United States Code, Section(s)  2252

The facts to support the issuance of a Search Warrant are as follows:

see attached affidavit

```
F I L E D

MAY 2 4 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

Continued on the attached sheet and made a part hereof.  ☒ Yes  ☐ No

_____
Signature of Affiant
SA Gregory P. Zack, FBI

Sworn to before me, and subscribed in my presence

Date  January 9, 2004  at  Wilmington, DE
                                        City and State

Honorable Mary Pat Thynge
United States Magistrate Judge           _____
Name and Title of Judicial Officer       Signature of Judicial Officer

Schedule A

███████████████ ilmington, DE 10805 is a red brick, two story row house, having white framed windows, dark brown wood front door, a gray rock wall on the front porch, and a black mailbox with the number ██████

ATTACHMENT A

1.   Records, documents, correspondence, notes, and/or any
other materials relating to contact with or by grlnow4u01,
girlr4uandu, meynglick, sarag110159, char34char, char34lene,
laren4urlove, meyounglick, and char43char.

2.  Internet billing and use records.

3.   Records or other items that evidence ownership or use of
computer equipment found at the premises to be searched,
including, but not limited to, sales receipts, handwritten notes,
and handwritten notes in computer manuals.

4.   Records evidencing occupancy or ownership of the premises to
be searched, including, but not limited to, utility and telephone
bills, mail envelopes, and/or addressed correspondence.

5.   Any and all visual depictions of minors engaged in sexually
explicit conduct, as defined in 18 U.S.C. § 2256, in any format
or media, including, but not limited to, undeveloped photographic
film, photographs, magazines, videotapes, slides, and motion
picture films.   Such depictions include, but are not limited to
the following video files: "r@ygoldstylealicia-5.mpg" and "3yo
TABITHA(Sucking).rm".

6.   Any and all documents, including correspondence, books,
ledgers, and/or records pertaining to the transportation,
shipment, receipt, distribution, possession, and/or advertisement
of visual depictions of minors engaged in sexually explicit
conduct, as defined in Title 18, United States Code, Section
2256, transmitted or received using computer, some other facility
or means of interstate or foreign commerce, common carrier,
and/or the United States mail.

7.  A computer(s) and all related computer equipment, including
scanners, peripherals, related instructions in the form of
manuals, as well as the software used to operate the computer(s),
and any CD-ROMS, zip disks, floppy disks, DVDs, and other
magnetic storage devices.   The subsequent forensic analysis of

28

these items is to be focused on searching for the items described
in paragraphs 1-6 above.

# UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF DELAWARE

*IN THE MATTER OF THE SEARCH OF THE* )
*PREMISES KNOWN AS* ▮▮▮▮▮▮▮▮▮▮▮ )
*Wilmington, DELAWARE 19805, DESCRIBED* )   **Case No. 04-**
*AS A RED BRICK, TWO STORY ROW HOUSE,* )
*HAVING WHITE FRAMED WINDOWS, DARK* )
*BROWN WOOD FRONT DOOR, A GRAY ROCK* )
*WALL ON THE FRONT PORCH, AND A BLACK* )
*MAILBOX WITH THE NUMBERS* ▮▮▮▮. )

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Gregory P. Zack, being duly sworn, hereby depose and say:

1.   I am a Special Agent for the Federal Bureau of Investigation ("FBI"), and have been so employed for five (5) years.   I currently am assigned to the Maryland Metropolitan Office at Calverton, Maryland within the Baltimore Division. My responsibilities include the investigation of various criminal offenses, including crimes involving the sexual exploitation of children.   I have received specialized training in the investigation of child pornography matters and crimes involving computers.

2.   This affidavit is submitted in support of an application for a search warrant for ▮▮▮▮▮▮▮▮▮▮▮▮▮, Wilmington, Delaware, for evidence of violations of Title 18, United States Code, Section 2252(a)(1), (2), and (4)(B), which

1

prohibit the transportation, shipment, receipt, distribution, and possession of child pornography.

3.    The residence at ███████████████, Wilmington, Delaware, is further described as a red brick, two story row house with white framed windows, a dark brown wood front door, a gray rock wall on the front porch, and a black mailbox with the numbers █████

4.    The information contained in this affidavit is based on my personal knowledge, information provided to me by other law enforcement officials, information provided by witnesses, and information from records checks conducted by law enforcement officials and support employees.  Because this affidavit is being submitted for the limited purposes of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  Instead, I have set forth facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Section 2252, is located at ███████████████mington, Delaware.

## RELEVANT STATUTES

5.    Title 18, United States Code, Section 2252, makes it illegal for any person to knowingly transport, ship, receive, distribute, reproduce for distribution, sell, possess with intent to sell, or possess visual depictions that affect interstate commerce, if: (1) the production of such visual depiction

2

involves the use of a minor engaged in sexually explicit conduct; and (2) such visual depiction is of such conduct. Each subsection of Section 2252 specifically refers to computers as one means by which a visual depiction may travel in and/or otherwise affect interstate commerce.

6. Title 18, United States Code, Section 2256, provides the definitions for Section 2252. A "minor" is any person under the age of 18 years old. "Sexually explicit conduct" includes actual or simulated sexual intercourse (including genital-genital, oral-genital, anal-genital, or oral-anal), bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person. "Producing" means producing, directing, manufacturing, issuing, publishing or advertising. A "visual depiction" includes undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.

7. For purposes of this affidavit, any individual under the age of 18 will be referred to as a "child" or "minor", and any visual depiction of a child or minor engaging in "sexually explicit conduct," as that term is defined in Title 18, United States Code, Section 2256, will be referred to as "child pornography."

3

## USE OF COMPUTERS WITH CHILD PORNOGRAPHY

8. As a result of my training and experience, I know that computers are utilized by individuals who exploit children (which includes collectors of child pornography) to: a) correspond with like-minded individuals via e-mail, chat, bulletin boards, newsgroups, instant messages, file transfers and other means; b) store identifying information concerning child victims, as well as identifying information about other individuals who share the same interests; c) locate, view, download, collect and organize images of child pornography found through the Internet. Computers also afford individuals a degree of anonymity.

9. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmark" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or a "footprints" providing evidence of a computer users internet activity.

4

## AMERICA ONLINE, INCORPORATED

10.  America Online, Incorporated (AOL) is a commercial computer service that provides connection to the Internet enabling subscribers to access electronic mail (email) service, instant messaging, and chat rooms. Electronic mail service is analogous to writing letters and sending them through the mail. Text messages and graphic images (photographs) can be sent to subscribers, or any person with an Internet email address. Instant messaging (IM) is real-time typewritten conversation between two people who are online simultaneously. Chatrooms are electronic areas, distinct through the topic of interest, where people can chat, online, and exchange graphic image files with each other. An online program entitled "List Me," allows an Internet user to place his name on a list, from a particular chat room, in order to receive any graphic image files and messages sent to the "list." Each AOL subscriber must have access to a computer that communicates through a modem connected to telephone lines with the central computer system located in Virginia. Any AOL subscriber sending or receiving email accesses such service through AOL's server in Virginia. Any AOL subscriber's opened or unopened email remains on the server until deleted or retrieved. Both text and graphic files can be saved to the subscriber's computer hard drive or diskettes for access and printing at any time.

## BACKGROUND OF CURRENT INVESTIGATION

11.  On July 15, 2002, Task Force Agent Michael Miller (TFA Miller), who was assigned to the Tampa Filed Office of the FBI, began an undercover investigation of subjects who were identified as child pornographic traders by defendant ███████ America Online (AOL) screen name ███████, who was indicted by a Federal Grand Jury in the Middle District of Florida on March 13, 2002 for receiving and distributing child pornography in violation of Title 18, United States Code, Section 2252(a)(1). ████ subsequently pled guilty to this charge and was sentenced to federal prison on September 24, 2002.

12.  Pursuant to a proffer agreement that was dated May 10, 2002, ████ stated that he did most of his trading with AOL screen name ███████, also known as ███████ advised that most of the other individuals involved in this group were generally copied on the email that was sent by ███████. An examination of ████ computer hard drive revealed that ████ communicated with the following group of screen names: ███████ ███████, ███████, ███████, and ███████ authorized the FBI to use his screen name, or a variation thereof, to re-establish connection with the group identified above. TFA Miller, acting in an undercover capacity, created the screen name of ███████, which was similar to the screen name ███████ used by ████

6

13. On July 7, 2002, AOL responded to an administrative subpoena for subscriber information for ██████████. AOL's response revealed that the screen name of ██████████ belonged to ██████████ of ██████████, Seekonk, Massachusetts 02771. AOL subscriber information revealed that ██████████ had provided AOL with an evening telephone number of ██████████ and had additional screen names of ██████████, ██████████, ██████████ and ██████████ AOL records indicate that Altonian's account was terminated on December 12, 2001, because graphic image files were transferred through this account which violated AOL's terms of service contract.

14. On July 15, 2002, while acting in an undercover capacity, TFA Miller logged on to AOL from the FBI's Tampa Office using the AOL screen name ██████████ Based on the information provided by defendant ██████ TFA Miller sent email messages to the individuals of the group, including an email message to

██████████

15. On July 17, 2002, while acting in an undercover capacity, TFA Miller logged on to AOL from the FBI's Tampa Office using the AOL screen name ██████████ TFA Miller sent an email message to AOL screen name ██████████ asking if he had been "in touch" with ██████████

16. On July 18, 2002, TFA Miller, using undercover AOL screen name ██████████ received an email message from AOL

-7-

screen name ██████, stating, in part, that ████████ had

changed his/her screen name to██████████

 17. On July 23, 2002, TFA Miller, while acting in an

undercover capacity, logged on to AOL from the FBI's Tampa Office

using the AOL screen name████████, sent an email message to

████████ attempting to make contact with this AOL user. The

following is an excerpt from this email:

> Subj: hi Charlene
>
>    Date: 7/23/2002 2:04:57 PM Central Daylight Time
>    From: ████████
>    To: ████████
>    hey Charlene
>
>    Haven't heard from u in a while, I've been busy
>    and im back now. U got any new stuff?
>
>    sara

 18. On July 23,2002, while acting in an undercover

capacity, TFA Miller logged onto America Online (AOL) from the

FBI's Tampa office using the AOL screen name ████████. TFA

Miller downloaded and saved several image files from AOL screen

name ████████ which contained child pornography. These images

were also forwarded to ████████ and other identified AOL screen

names.

 19. On July 24, 2002, the user of AOL screen name

████████ replied to TFA Miller's ████████ initial email

message. The following is an excerpt from this email:

   Subj: Re: hi Charlene

8

Date: 7/24/2002 10:57:31 AM Central Daylight Time
From: ████████████
To: ████████████

Yes hon - have missed you so - what happened -
fill me in OK babe - charleene :)

20.   An administrative subpoena that was served on AOL for

subscriber information for ████████████ revealed the subscriber of

this screen name is identified as ████████████ of ████████████

████████ Seekonk, Massachusetts, which is the same address

associated with ████████████ using the ████████████ screen

name. Additional screen names associated with this account were

identified as ████████████, ████████████, ████████████, and ████████████

This account was activated on March 4, 2002; approximately three

(3) months after AOL terminated ████████████ for violating AOL's

terms of service contract when he used the ████████████ screen

name.

21.   On August 1, 2002, while acting in an undercover

capacity, TFA Miller logged onto AOL from the FBI's Tampa Office

using the AOL screen name ████████████ TFA Miller downloaded and

saved two (2) graphic image files from AOL screen name

████████████ that contained child pornography. These images were

also forwarded to ████████████ and other identified AOL screen

names.

22.   Also on August 1, 2002, while acting in an undercover

capacity, TFA Miller logged onto America Online (AOL) from the

FBI's Tampa Office using the AOL screen name ████████████. TFA

9

Miller downloaded and saved eight image files from AOL screen
name ███████████ which contained child pornography. These images
were also forwarded to ███████████ and other identified AOL screen
names.

   23.   On August 9, 2002, while acting in an undercover
capacity, TFA Miller logged onto America Online (AOL) from the
FBI's Tampa Office using the AOL screen name ███████████. TFA
Miller downloaded and saved a graphic image file from AOL screen
name ███████████ which contained child pornography. This image
was also forwarded to ███████████ and other identified AOL screen
names.

   24.   On August 15, 2002, pursuant to a search warrant being
served and then executed by FBI Agents of the Tampa Division at
the Ft. Myers Resident Agency, ███████████, user of AOL
screen name ███████████ was interviewed at his residence in
███████████ Florida. During that interview, ███████████ admitted
to downloading child pornography from the Internet. ███████████
stated that he had been receiving child pornography for the past
five (5) years from a person known to him as "Char". ███████████
and the person referred to as "Char" traded child pornography
with a core group of AOL users identified by the screen names:
███████████, ███████████ and ███████████ The person ███████████
referred to as "Char" changed his/her screen name every few
months, but always maintained the letters "Char" in the screen

name.

25.  On August 19, 2002, while acting in an undercover capacity, TFA Miller logged onto America Online (AOL) from the FBI's Tampa Office using the AOL screen name ███████████. TFA Miller downloaded and saved several graphic image files that were sent by ███████████ which contained child pornography. ███████████ had received the images from AOL screen name ███████████, ███████████ forward these same images to ███████████ ███████████ ███████████ ███████████e. These were the first child pornographic images sent by ███████████ to TFA Miller.

26.  On August 26, 2002, while acting in an undercover capacity, TFA Miller logged onto America Online (AOL) from the FBI's Tampa Office using the AOL screen name ███████████. TFA Miller downloaded and saved an image file that was sent by ███████████ which contained child pornography. ███████████ also sent this graphic image file to ███████████ and other identified AOL users.

27.  On August 27, 2002, TFA Miller created a new undercover AOL screen name of ███████████ which was similar to ███████████ screen name ███████████. TFA Miller sent out an email to the members of the group. The context of the email is as follows:

Subj:     **my new screen name**
Date:     8/27/2002 3:23:31 PM Central Daylight Time
From:
To:       ███████████████████████  ███████████ and
          ███████████████████

Hey everybody, I had to sign up with a new screen name,

████████

love Kimmy

28.  On August 30, 2002, while acting in an undercover capacity, logged onto AOL from FBI's Tampa Office using AOL screen names ████████ and ████████. TFA Miller downloaded and saved a child pornographic image file that was sent by ████████ which contained child pornography. ████████ also forwarded this child pornographic image to other identified AOL users.

29.  On September 3, 2002, while acting in undercover capacity, TFA Miller logged onto AOL from FBI's Tampa Office using AOL screen names ████████ and ████████. TFA Miller downloaded and saved a child pornographic .mpg (video) file that was sent by ████████ which contained child pornography. ████████ also forwarded this child pornographic video clip to other identified AOL users. This image is described as follows: 5-year-old sucks a little boys dick.mpg: This video clip, which is twenty-five(25) seconds in length, shows a minor male performing oral sex on another minor male. The video clip shows only the face of the minor male performing the sexually explicit act. The specific age of the other minor male cannot be determined from the video clip. This video clip was sent to ████████ by AOL screen name ████████ on August 6, 2002. This screen name ████████) was an additional screen name associated with the ████████ AOL account. As stated previously, the subscriber on this account is identified as ████████

12



██████ of ████████████ Seekonk, Massachusetts.

30.  On October 13, 2002 an email message was sent by AOL screen name ██████████ to AOL users ██████████, ███████████ ██████████, ████████████ and ██████████. The following is an excerpt from that email:

Subj:    **Hi again**
Date:    10/13/2002
From:
To:      ████████ ██████, La█████████████
         █████N██████████████

I just wanted you all to know that I'm alive and well and still living in Mass. I am in the middle of a billing snafu with AOL and am currently on a borrowed screen name from another account - I hope to have my old screen name active again soon- I'm upset because I've obviously lost a ton of back mail and recent mail as well - if I can't get my old name active again - I'll resubscribe and forward my new name to you - in the meantime, if you have unusually hot pics and/or really new and good vids feel free to email to me at this address- thanks - you have been great to me - it's much appreciated - Charlene (was ██████████████

31.  An administrative subpoena served on AOL for subscriber information for ██████████ revealed that this screen name belongs to ████████████ who provided an address of ███████████████ Pawtucket, Rhode Island. This account was established on October 9, 2002.  Other screen names established with this account included ██████████, ██████████c, and ██████████ ████████████ has been identified as the son of ██████████████.

32.  On December 13, 2002, TFA Miller logged on to AOL using undercover email accounts and downloaded an email from ████████████ dated December 11, 2002.  The following is an excerpt from this

13

email:

Subj:      I"MMMMMMMM BACK - lol

Date:      12/11/2002
From:
To:

Hi All - I just wanted to tell you that you no longer
can send mail to that temp name I was using on borrowed
account -                  - I'm on a new acct. now and you
can send to me as char35lene - if you had sent any
really good mail (pics/vids) to the other name and It's
still in your old mail section - I'd love for you to
forward to me at this address - I'll be sending soon -
getting re-established and trying to get used to
AOL8.0 - I'm not sure if it's better than 5.0 was - LOL
- Thanks again - I'll be in touch - Charlene

33.   TFA Miller, acting in an undercover capacity, used AOL

to maintain communications with the person using the screen names

                        and              through March 21, 2003.

During the continued communications with the individual using

these screen names, TFA Miller received numerous image and video

files which contained child pornographic images.

34.   On May 15, 2003, agents from the Boston Division of the

Federal Bureau Investigation executed a search warrant at the

residence of                                          Seekonk,

Massachusetts.   At that time,          agreed to submit to an

interview.   During the interview,          admitted that he

received and distributed child pornography through AOL using the

screen names:              ,              and             .

authorized the FBI to use his screen name, or a variation

14

thereof, for investigative purposes.

35.  On May 16, 2003, TFA Miller, acting in an undercover capacity, assumed ▮▮▮▮▮ online identity for the AOL screen name of ▮▮▮▮▮ and changed the password for this account. At this time, TFA Miller started to review the e-mail messages from this account.  The review revealed that the account contained over 900 messages.  During the review of ▮▮▮▮▮ e-mail messages, TFA Miller observed numerous messages from AOL screen name ▮▮▮▮▮ which contained images of child pornography.  TFA Miller downloaded a number of those e-mail messages with attachments onto a disk.  A copy of that disk has been forwarded to your affiant.  The disk includes the e-mails referenced below in paragraphs 36 through 46.

36.  SA Zack reviewed an e-mail dated May 9, 2003, from an individual using the AOL screen name ▮▮▮▮▮ who forwarded the e-mail message to ▮▮▮▮▮ and a second AOL user with the following file attached r@ygoldstylealicia-5.mpg.  The beginning of the video displayed a pre-pubescent female performing oral sex on an adult male.  At the end of the video, the adult male performed vaginal intercourse with the child.

37.  SA Zack reviewed an e-mail dated April 23, 2003, from an individual using the AOL screen name ▮▮▮▮▮ who forwarded the e-mail message to ▮▮▮▮▮ and other AOL users which displayed multiple child pornographic images of  a  pre-pubescent

15

girl.   The images where displayed together and depicted the pre-
pubescent girl performing oral sex on an adult male, having
vaginal intercourse with an adult male, and laying on top of the
adult male while spreading her legs and displaying her vagina.

    38.   SA Zack reviewed an e-mail dated April 25, 2003, from
an individual using the AOL screen name ████████ who forwarded
the e-mail message to ████████ and another AOL user displaying
several images of child pornography.   One image displayed a pre-
pubescent girl performing oral sex on an adult male.   A second
image displayed a different minor female clothed placing her hand
on the erect penis of an adult male.   A third image displayed a
close up of the vagina of a pre-pubescent girl.

    39.   SA Zack reviewed an e-mail dated April 25, 2003, from
an individual using the AOL screen name ████████ who forwarded
an e-mail message entitled "vyg yummyzzPics &Mpeg" to ████████
and other AOL users.   The e-mail message contained  an attached
image file with a video file entitled "3yo TABITHA(Sucking).rm"
The video file entitled "3yo TABITHA(Sucking).rm" shows a young
girl wearing a pink dress performing oral sex on an adult male.
The still image shows the young girl with her tongue on an adult
male's erect penis.

    40.   SA Zack reviewed an e-mail dated April 25, 2003, from
an individual using the AOL screen name ████████ who forwarded
an e-mail message entitled (no subject) to ████████ and other

16

AOL users.  The text of the e-mail message read as follows:
"That strap-on f-in-male is great but seems hard to do.  Is she
hold his balls also???"  Attached to this message was a child
pornographic image of an adult female penetrating a pre-pubescent
female with an object.

41.  SA Zack reviewed an e-mail dated April 26, 2003, from
an individual using the AOL screen name ████████ who forwarded
an e-mail message entitled "trade 1 for 1" to ████████ and
other AOL users.  The e-mail message contained a child
photographic image of two pre-pubescent females kissing.  At the
bottom of the photograph is a text message which read as follows:
"yg action only".

42.  SA Zack reviewed an e-mail dated April 29, 2003, from
an individual using the AOL screen name ████████ who forwarded
an e-mail message entitled "You wanted to be added to this" to
████████ and other AOL users.  The e-mail message contained a
child pornographic image of a pre-pubescent female with her legs
spread and the penis of an adult male pressed against the vagina
of the pre-pubescent female.

43.  SA Zack reviewed an e-mail dated May 18, 2003, from an
individual using the AOL screen name ████████ who forwarded an
e-mail message entitled "real trade master list" to ████████
and another AOL user.  The e-mail message contained several child
pornographic images.  One image displayed an adult female placing

17

her hand on the vagina of a pre-pubescent female.  A second image displayed a pre-pubescent female performing oral sex on an adult female.

44.  SA Zack reviewed an e-mail dated May 19, 2003, from an individual using the AOL screen name ███████ who forwarded an e-mail message entitled "real trade master list" to ███████ and other AOL users.  The e-mail message contained several child pornographic images.  One image displayed a pre-pubescent female urinating on an adult male.  A second image displayed an adult spreading the vagina of a pre-pubescent female.  A third image displayed a nude, pre-pubescent female laying on a couch with her legs spread.  A fourth image displayed a nude, pre-pubescent female sitting on a bed with her legs spread open.  In the fourth image, the arm and hand of another person is visible and is penetrating the vagina of the nude, pre-pubescent female.

45.  SA Zack reviewed an e-mail dated May 20, 2003, from an individual using the AOL screen name ███████ who forwarded an e-mail message entitled "List" to ███████ and other AOL users. The e-mail message contained a child photographic image of a nude, pre-pubescent female performing oral sex on an adult male.

46.  SA Zack reviewed an e-mail dated June 1, 2003, from an individual using the AOL screen name ███████ who forwarded an e-mail message entitled "-b" to ███████ and another AOL user. The e-mail message contained nine child pornographic images.  Two

18

of the images displayed a pre-pubescent female wearing only a
blue shirt performing oral sex on a nude, pre-pubescent male.
Two images displayed the same female having vaginal intercourse
with a pre-pubescent male while performing oral sex on another
male.   Five other images displayed the same pre-pubescent female
having vaginal intercourse with a pre-pubescent male.

47.   I have reviewed the image files described in
paragraphs 36 through 46 of this affidavit, and based on my
training and experience, they contain depictions of minors
engaged in sexually explicit conduct as defined in Title 18,
United States Code, Section 2256.

48.   The Tampa Division of the Federal Bureau of
Investigation served an administrative subpoena on AOL to
determine the identity of the account holder for the screen names
████████████ and █████████████   AOL responded that the account holder
for the screen names █████████ and █████████ was Jeffrey
Russell, ██████████████████████ Wilmington, Delaware, 19805,
telephone number ████████████████

49.   The Federal Bureau of Investigation, Baltimore
Division, served a second administrative subpoena on America
Online to determine if the account for █████████ was still
active.   On November 4, 2003, Investigative Analyst Dave Barnett,
Federal Bureau of Investigation, Baltimore Division, received a
response from America Online that the account for ██████████ was

still active and listed the account holder as Jeffrey Russell,
█████████████████, Wilmington, Delaware 19805, telephone
number █████████████

    50.   A record check with the Delaware Department of Motor
Vehicles identified that Jeffrey James Russell, date of birth
█████████ social security account number █████████████, residing
at █████████████ Wilmington, Delaware, 19805.

    51.   A ChoicePoint public records search completed on
10/20/2003, provided public source information that Jeffrey J.
Russell, social security account number █████████████ resides at
███████████████ Wilmington, Delaware, 19805.

    52.   On October 31, 2003, SA Zack received information from
Postal Inspector Jane Mullin, United States Postal Inspection
Service, that Jeffrey Russell and a female, (FNU) Russell, was
receiving mail at █████████████ Wilmington, Delaware,
19805.

    53.   The Baltimore Division of the Federal Bureau of
Investigation served an administrative subpoena on Verizon
Delaware, Inc. to determine the subscriber to telephone number
██████████   On 11/05/2003, SA Zack received the response from
Verizon Delaware, Inc. which identified the subscriber to the
telephone number █████████████ as Jeffrey and ██████████, █████
███████████ Wilmington, Delaware 19805.

    54.   AOL does not maintain logs of incoming telephone

numbers used to access AOL.   AOL contracts with Internet carriers
such as UUNET Technologies, Inc., owned by MCI, who provide AOL
with telephone access numbers that AOL subscribers use to dial
into and access AOL accounts.   UUNET Technologies, Inc.,
maintains logs of telephone numbers used by AOL subscribers to
access their AOL accounts.

   55.   On December 12, 2003, an administrative subpoena was
served on UUNET Technologies, Inc., requesting records of the
telephone number or telephone numbers used to access by AOL
screen name ▮▮▮▮▮▮▮▮ for the dates of December 7, 2003 through
December 10, 2003.

   56.   On December 12, 2003, UUNET technologies, Inc.,
responded to the administrative subpoena and stated that
▮▮▮▮▮▮▮▮▮ dialed into AOL from ▮▮▮▮▮▮▮▮▮▮ on December 7,
2003, at 18:27 GMT and terminated the session at 20:20 GMT on the
same date.   This telephone number was the same number provided by
Jeffrey Russell when he signed up with AOL for his ▮▮▮▮▮▮▮▮▮
screen name, and identified by Verizon as the telephone number of
Jeffrey Russell at ▮▮▮▮▮▮▮▮▮▮t, Wilmington, Delaware
19805.   The subpoena response provided by UUNET Technologies,
Inc. listed the following additional log in information for AOL
screen name▮▮▮▮▮▮▮▮▮

        (a) ▮▮▮▮▮▮▮▮ dialed into AOL from ▮▮▮▮▮▮▮▮ on
December 7, 2003, at 22:49 GMT and terminated the session at

22:55 GMT on the same date;

    (b) ███████████ dialed into AOL from ████████████ on
December 8, 2003, at 18:22 GMT and terminated the session at
18:34 GMT on the same date;

    (c) ███████████ dialed into AOL from ████████████ on
December 8, 2003, at 18:38 GMT and terminated the session at
19:12 GMT on the same date;

    (d) ███████████ dialed into AOL from (███████████ on
December 10, 2003, at 01:44 GMT and terminated the session at
02:42 GMT on the same date;

## CHILD PORNOGRAPHY COLLECTORS

57. I have consulted with Supervisory Special Agent (SSA)
Jennifer Eakin of the Federal Bureau of Investigation concerning
this investigation. SSA Eakin entered on duty in 1984 and is now
assigned to the Behavioral Analysis Unit at the FBI Academy in
Quantico, Virginia where she consults on a daily basis with both
foreign and domestic police agencies on Crimes Against Children,
and particularly on behavioral issues associated with the
Internet Sexual Exploitation of Children. She is a qualified
expert in this field and has testified as such in federal court.
In addition, SSA Eakin is involved in the following ongoing
research projects focusing on the Internet Offender:  a joint
project with the Federal Bureau of Prisons examining the
relationship of collecting child pornography to hands-on

22

offending,   and an FBI archival study reviewing over three
thousand closed cases addressed by the Innocent Images Undercover
Initiative since 1994.

58.   According to SSA Eakin, individuals who collect child
pornography are sexually attracted to children, their sexual
arousal patterns and erotic imagery focus, in part or in whole,
on children.    The collection may be exclusively dedicated to
children of a particular age/gender or it may be more diverse,
representing a variety of sexual preferences, including children.
Child pornography collectors express their attraction to children
through the collection of sexually explicit materials involving
children as well as other seemingly innocuous material related to
children.   These individuals may derive sexual gratification from
actual physical contact with children as well as from fantasy
involving the use of pictures or other visual depictions of
children or from literature describing sexual contact with
children.    The overriding motivation for the collection of child
pornography may be to define, fuel, and validate the collectors
most cherished sexual fantasies involving children.   Visual
depictions may range from fully clothed depictions of children
engaged in non-sexual activity to nude or partially nude
depictions of children engaged in explicit sexual activity.   In
addition to child pornography, these individuals are also highly
likely to collect other paraphernalia related to their sexual

23

interest in children.   This other material is sometimes referred to as "child erotica" which is defined as any material, relating to children, that serves a sexual purpose for a given individual. It is broader and more encompassing, than child pornography, but at the same time the possession of such corroborative material, depending on the context in which it is found,   may be behaviorally consistent with the offender's orientation toward children and indicative of his intent.   It includes things such as fantasy writings, letters, diaries, books, sexual aids, souvenirs, toys, costumes, drawings, cartoons and non-sexually explicit visual images.

59.   According to SSA Eakin, child pornography collectors reinforce their fantasies, often by taking progressive, overt steps aimed at turning the fantasy into reality in some or all of the following ways:   collecting and organizing their child-related material; masturbating while viewing the child pornography; engaging children, online and elsewhere, in conversations, sometimes sexually explicit conversations, to fuel and fortify the fantasy; interacting, both directly and indirectly, with other like-minded adults through membership in organizations catering to their sexual preference for children thereby providing a sense of acceptance and validation within a community; gravitating to employment, activities and/or relationships which provide access or proximity to children; and

frequently persisting in the criminal conduct even when they have reason to believe the conduct has come to the attention of law enforcement.   These are need driven behaviors to which the offender is willing to devote considerable time, money, and energy in spite of risks and contrary to self interest.

    60.   Child pornography collectors almost always maintain and possess their material in the privacy and security of their homes or some other secure location where it is readily available.   The collection may include sexually explicit or suggestive materials involving children, such as photographs, magazines, narratives, motion pictures, video tapes, books, slides, drawings, computer images or other visual media.   The collector is aroused while viewing the collection and, acting on that arousal, he often masturbates thereby fueling and reinforcing his attraction to children.   This is most easily accomplished in the privacy of his own home.   Because the collection reveals the otherwise private sexual desires and intent of the collector and represents his most cherished sexual fantasies, the collector rarely, if ever, disposes of the collection.   The collection may be culled and refined over time, but the size of the collection tends to increase.   Individuals who utilize a collection in the seduction of children or to document that seduction treat the materials as prized possessions and are especially unlikely to part with them.

    61.   The possession of child pornography should always be

25

viewed as both a violation of the law and possible corroboration of child sexual victimization. In the context of child molestation, child pornography and child erotica may be used in several ways, including the following: to desensitize or lower the inhibitions of children targeted for seduction; to arouse the selected child partner; and to demonstrate the desired sexual acts. While the collection of child pornography does not tell us what the individual has done or will do, it is the best indicator of what he wants to do.

## CONCLUSION

62. Based on the foregoing, I have probable cause to believe that the individual receiving and posting the above-described images knowingly transported, shipped, received, distributed, and possessed in interstate commerce visual depictions of minors engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(1), (2), and (4)(B).

26

63.    I also have probable cause to believe that there is in the residence located at ▮▮▮▮▮▮▮▮▮▮▮▮▮ Wilmington, Delaware, evidence of those criminal violations, contraband, things otherwise criminally possessed, and/or property that has been used as a means of committing criminal offenses, as described in Attachment A.

Gregory P. Zack
Special Agent, Federal Bureau of
Investigation

2004 JAN -9 AM 11: 46

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE